# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| WESTERN ENVIRONMENTAL CORPORATION OF OHIO, | : : : | Case No. 1:21-cv-194 |
| Plaintiff, | : : | Judge Timothy S. Black |
| vs. | : : | |
| HARDY DIAGNOSTICS, *et al.*, | : : | |
| Defendants. | | |

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND THIS CASE TO THE WARREN COUNTY, OHIO COURT OF COMMON PLEAS (DOC. 12)**

This case is before the Court on Plaintiff's motion to remand and for attorney's fees (Doc. 12) and the parties' responsive memoranda. (Docs. 13, 19, and 21).

## I. BACKGROUND

The following facts are taken from allegations in the Complaint (Doc. 3) and the Notice of Removal (Doc. 1). Plaintiff Western Environmental Corporation of Ohio ("WEC") originally filed this case in Warren County, Ohio Court of Common Pleas. (Doc. 3). WEC claims breach of contract and seeks to foreclose on a mechanic's lien against Defendant Hardy Diagnostics ("Hardy"). (Doc. 3 at ¶¶2, 27, 28). Hardy has a place of business in Warren County, Ohio but is organized under the laws of the State of Wyoming. (Doc. 1 at ¶2; Doc. 3 at ¶2). The contract dispute and mechanic's lien arose from a transaction regarding the design and build-out of a laboratory's "cleanroom" to certain industry specifications. (*See* Scope of Work for Environmental Controlled Laboratory, Doc. 3-1, at §2.3). WEC, the contractor, alleges its work met the parties'

agreed specifications. (Doc. 3 at ¶11). Hardy appears to believe that the cleanroom needed to, but did not, meet a threshold for "air changes per hour." (*Id.* at ¶13). WEC shutdown the project, leaving $200,219.34 unpaid on the contract. (*Id.* at 21). WEC filed and allegedly perfected a mechanic's lien. (*Id.* at ¶¶24-27). Then it filed this foreclosure action and breach of contract claim in state court.

WEC has also named Ohio-based Defendants—specifically, the Warren County Treasurer and Warren County Auditor ("Treasurer" and "Auditor"). (Doc. 3).[1] As explained by Hardy in its notice of removal, "[t]he Treasurer has been joined presumably because the Treasurer recovers taxes from the sale proceeds of a foreclosure, which comprises WEC's second cause of action." (Doc. 1 at ¶2). According to the complaint, the same is true for the Auditor. (Doc. 3 at ¶29).

On March 23, 2021, Hardy removed the action, claiming diversity jurisdiction. (Doc. 1). In the notice, Hardy argues fraudulent joinder of the only Ohio based Defendants—the Auditor and Treasurer. (Doc 1 at ¶2). Hardy reasons that both the Auditor and Treasurer are only present because of the foreclosure claim—and Hardy believes the foreclosure claim is invalid. (*Id.*). Hardy specifically states "the foreclosure cause of action is based on a mechanic's lien…that is deficient on its face. Because the lien was recorded beyond the time limit set forth in R.C. 1311.06(B)(3), there is no basis in law for WEC's foreclosure cause of action…." (Doc. 1 at ¶2). Hardy also filed a

---

[1] Seemingly another interest holder, U.S. Bank National Association (a Delaware-incorporated bank), is also a Defendant but it is not relevant for the present motion because its inclusion would not destroy diversity.

motion to dismiss based on this same allegation of untimely recording. (Doc. 2).

In its motion to remand, WEC argues that the Auditor and Treasurer, the non-diverse entities, were indispensable parties to a foreclosure action, and that WEC's time to record the lien was tolled by virtue of Ohio's legislative COVID response, commonly referred to as "H.B. 197." (Doc. 13 at 10; *see also* Am. Sub H.B. 197, §22). In Hardy's memorandum in opposition, Hardy concedes that "WEC is correct about its lien having been timely recorded," but then asserts "there are still good grounds to dismiss the foreclosure claim." (Doc. 19 at 1). The "good grounds" are a severance under Federal Rule of Civil Procedure 21. (Doc. 19 at 3-7). Hardy proposes the Court sever the foreclosure case and its non-diverse parties, the Auditor and Treasurer, while maintaining the contract dispute between the diverse parties, WEC and Hardy. (*Id.*)

## II. STANDARD OF REVIEW

A party can remove an action from state court if the federal court to which the action is removed would otherwise have had original jurisdiction. 28 U.S.C. § 1441(a). Generally, where the citizenship of the parties is diverse and the amount in controversy exceeds $75,000, a federal court has jurisdiction to hear the case. 28 U.S.C. § 1332(a). The existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal. *Harper v. AutoAlliance Int'l., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004). A defendant desiring to remove a case has the burden of proving the diversity jurisdiction requirements and must do so by a preponderance of the evidence. *Rotschi v. State Farm Mut. Auto. Ins. Co.*, Case No. 96-5494, 114 F.3d 1188, 1997 WL 259352, at *2–3 (6th Cir. May 15, 1997).

3

When a defendant does not satisfy its burden of demonstrating that removal was proper, the district court may remand the case back to the state court from which it was removed. 28 U.S.C. § 1447(c). "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, <u>the removal statute should be strictly construed and all doubts resolved in favor of remand</u>." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006) (citation omitted) (emphasis added).

### III. ANALYSIS

**A. Remand**

Hardy asks this Court to reconfigure the case to "preserve" diversity jurisdiction, as if it is the Court's prerogative to stretch jurisdiction into state law matters without complete diversity. (Doc. 19 at 3). In fact, it is Hardy's burden to establish its basis for jurisdiction "at the time of removal." *Harper*, 392 F.3d 195, 210 (6th Cir. 2004). Hardy has failed to carry that burden.

Because the liens were timely recorded, as now admitted by Hardy, the Auditor and Treasurer were proper parties at the time of removal. The Auditor and Treasurer are indisputably Ohio residents. "Diversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *See SHR Ltd. Partnership v. Braun*, 888 F.2d 455, 456 (6th Cir.1989). For this reason, removal was improper, and this case will be remanded.

Hardy's pivot to Rule 21 and 19 is unpersuasive. (Doc. 19). Hardy presumes that the Court ought to use those procedural devices to preserve jurisdiction for a case

4

improperly removed. Given that the presumption is in favor of remand, the Court would not do so lightly.

Furthermore, the Court finds the present case is differently positioned than the Hardy-cited case *Safeco v. City of White House*. (*See* Doc. 19 at 4 (citing *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540 (6th Cir. 1994)). There the court realigned then dropped parties to preserve diversity. *Id.* at 544. Hardy does not mention that the *Safeco* case was filed *in federal court* with diversity based on the pleadings—diversity subsequently destroyed by realignment. *Id.* To this Court's mind, it is one thing to ask a court to preserve jurisdiction by dropping parties after the Court has undertaken realignment; quite another to ask a court to do so after an improper removal.

Hardy is correct, though, that some courts have severed claims against nondiverse dispensable defendants to remedy jurisdictional problems in a removed case. *See DeGidio v. Centocor, Inc.*, No. 3:09CV721, 2009 WL 1867676, at *3 (N.D. Ohio June 29, 2009), as amended (July 8, 2009). The inquiry is guided by Federal Rules of Civil Procedure 21 and 19. Rule 21 states, in relevant part "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. On the other hand, Rule 19 does not speak to when a court should add or drop a party or a claim. Fed. R. Civ. P. 19. Instead, Rule 19 sets criteria for what parties are "required" to be joined and under what circumstances a case may proceed without them. *Id.* Thus, Rule 19's relevance to the current analysis involves an element of reverse inferencing: a party that is not required under Rule 19 *may*

5

*be* dropped under Rule 21 simply because the Court, for obvious reasons, could not drop required parties.

Hardy focuses its attention on Rule 19, arguing that the Auditor and Treasurer are necessary for the foreclosure claim of action but not necessary for the breach of contract claims. (Doc. 19 at 3-7). Accordingly, if the Court severs the foreclosure action it can resolve both the 'necessary party' and 'diversity jurisdiction' hurdles in a single bound. Since the Auditor and Treasurer, by Hardy's logic, can only be dropped if the foreclosure claim is severed under Rule 21, the Court looks to Rule 21 first.[2]

Hardy's Rule 21 bona fides are lacking. Hardy has neither filed a motion to sever nor advanced a proper justification for severance under the standard set out by *Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018). *Parchman* directs courts of whom severance is requested to analyze: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims. *Id.*

Hardy has said close to nothing about any of these factors. A review of the case would suggest the claims do arise out of the same transaction; there are common questions of law or fact; judicial economy would favor one case, not two; the overlap in proofs is likely to be substantial even if there are quite a bit more proofs in the contract

---

[2] If the foreclosure claim is not severed, the Auditor and Treasurer must stay because they are required parties in the foreclosure claim, as conceded by Hardy. (Doc. 19 at 7).

dispute; and the only prejudice to be avoided by severance is that Hardy's improper removal would be, essentially, forgiven. That is likely not the type of prejudice contemplated by Rule 21. Put plainly, the Court can discern no legally recognized reason for *severance*. Moreover, it is a long-established principle in the federal judiciary that "joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).

The Court finds no basis for severance under Rule 21. Accordingly, it will forego a Rule 19 analysis and remand the case.

**B. Attorney's Fees**

When a district court grants a motion to remand, it may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). WEC seeks attorney's fees and costs. (Doc. 13 at 9).

The standard for awarding fees and costs after remanding a removed case "should turn on the reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Courts may award attorney's fees under § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." *Id*. Conversely, "when an objectively reasonable basis exists, fees should be denied." *Id*.

Hardy argued fraudulent joinder of the auditor and treasurer—the non-diverse parties. Specifically, Hardy contended WEC had not timely recorded its mechanic lien. As such, the foreclosure case could not move forward. Since the Ohio-based Auditor and the Treasurer were parties only because of their necessary presence in the foreclosure

7

action, they were not necessary parties at all. With that in mind, Hardy had claimed they were fraudulently joined and that the case did have complete diversity.

But, as noted above, Hardy was mistaken. Ohio's H.B. 197 tolled all civil timelines, which—the parties now agree—includes the time to record a mechanic's lien. For that reason, WEC had timely recorded the mechanic's lien and could proceed with the foreclosure against all named parties, including the Ohio Auditor and Treasurer.

While this was undoubtedly a mistake, the Court does not find that Hardy was acting in an objectively unreasonable manner. The Court takes judicial notice of the fact that the pandemic-era tolling regime brought forth many questions regarding the proper scope and application of tolling to particular sets of facts. *See e.g.*, *State v. Hunt*, 5th Dist. Tuscarawas No. 2020 AP 09 0019, 2021-Ohio-528, ¶ 13; *State v. Henderson*, 7th Dist. Mahoning No. 18 MA 0090, 2020-Ohio-6847, ¶ 3; *State v. Howard*, 8th Dist. Cuyahoga No. 107467, 2020-Ohio-4739, ¶ 7-8; *J.J. v. Kilgore*, 10th Dist. Franklin No. 20AP-401, 2021-Ohio-928, ¶ 11.

Importantly, the Supreme Court of Ohio had to clarify, by order dated July 15, 2021, that H.B. 197 tolled civil timelines beyond those categorized as "limitations periods." *See Chapman Enterprises, Inc. v. McClain*, 2021-Ohio-2386, 165 Ohio St. 3d 428, 431, 179 N.E.3d 1201, 1204–05 (Ohio 2021) ("Although R.C. 5717.02 speaks of an "appeal" rather than a "limitation period," the 60-day period for filing an appeal with the BTA is functionally the same as a 60-day limitation period for initiating an administrative proceeding at the BTA."). Here, there are parallels to the facts of *Chapman*. The time to record a mechanic's lien is not a traditional "limitations period" in the same sense that a

8

statute of limitations is. This is because the mere recording of a lien itself only starts the clock on the statute of limitations for the foreclosure. *See Fieg Sewering Co. v. Romaniw*, No. 56526, 1990 WL 9930, at *3 (Ohio Ct. App. Feb. 8, 1990). Thus, *Chapman* could be thought of as clarifying the notion that H.B. 197 tolled more than just statutes of limitations.

*Chapman* was handed down almost four months *after* Defendants had filed their removal. (Doc. 1). With this state-of-affairs on the ground, the Court simply refuses to find that Hardy was acting with objective unreasonableness when it filed its notice of removal.

Given the circumstances, it also seems doubtful that Hardy removed the case to prolong litigation or for frivolous reasons. Hardy has its own counterclaims to press, and it has owned up to its mistake regarding the time to record a mechanic's lien. These factors counsel against a finding that Hardy has acted only to impede its adversary.

For the above reasons, the Court denies WEC's motion insofar as it seeks attorney's fees. (Doc. 12).

"On a motion for remand, the question is whether the district court lacks subject matter jurisdiction." *H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d 671, 676 (S.D. Ohio 2014). Having answered this question in the negative, it would be inappropriate to reach other pending motions. Accordingly, the Court will not reach Hardy's motion to dismiss (Doc. 2) or Hardy's motion to file an amended counterclaim (Doc. 23).

## IV. CONCLUSION

Based on the foregoing:

1. Plaintiff's motion to remand (Doc. 12) is **GRANTED**. This case is **REMANDED** to the Warren County, Ohio Court of Common Pleas from which it was removed. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

2. Plaintiff's request for attorney's fees (Doc. 12) is **DENIED**.

**IT IS SO ORDERED.**

Date: 3/8/2022

Timothy S. Black
United States District Judge